Beverly ADAMS, Plaintiff–Appellant,

v.

ALVERNO CLINICAL LABORATORIES, INC., Defendant–Appellee.

No. 03–4046.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 15, 2004.

Decided Jan. 20, 2005.

Douglas M. Grimes, Gary, IN, for Plaintiff–Appellant.

James D. Masur, II, Locke Reynolds, Indianapolis, IN, for Defendant–Appellee.

Before BAUER, COFFEY, and SYKES, Circuit Judges.

## ORDER

Alverno Clinical Laboratories dismissed Beverly Adams, an African–American woman 43 years of age at the time, as part of a reduction in force conducted along set guidelines. Adams sued, alleging that the termination violated Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act (ADEA), and the Family and Medical Leave Act (FMLA). The district court granted Alverno summary judgment on all counts; Adams appeals only as to the Title VII and ADEA counts. We affirm the grant of summary judgment.

Adams began working for the Sisters of St. Francis Health Services in 1989 as a phlebotomist (a laboratory technician). Alverno was formed in 1998 by the Sisters of St. Francis as a consolidation of all its existing laboratories. That same year, Adams transferred to Alverno's core facility in Hammond, Indiana as a "lab support service technician." Alverno determined in 2000 that a reduction in force (RIF) would be necessary to meet future budgetary targets.

The RIF was planned and executed by Alverno's CEO, Human Resources Director, and Laboratory Manager. These three department heads were also the final authority in Adams' hiring and eventual firing. In order to comply with the employee handbook, Alverno implemented objective criteria to guide the RIF. Alverno began the RIF by selecting employees with adverse disciplinary records, but there were not enough of these employees to satisfy the planned reduction. The next step was to perform "objective skills assessments (yielding a numerical score)" of the remaining employees. The categories scored on the skills assessment report (SAR) included a variety of "core knowledge" areas such as telephone skills, proficiency in various software packages used in the lab, and "assets to perform job" such as flexibility, teamwork, and overall lab knowledge.

Adams' department was drastically reduced in size. Of 20 full and part-time

employees, Alverno retained only eight. The seven top performers on the SAR, all of whom Alverno retained, scored from 14.5 to 18 points on the test, out of a possible 20 points. Two of the dismissed workers tied at 12.5, the top score in that group. Adams scored 11.5, tying with Sandy Stablein, a Caucasian woman whom Alverno retained. Stablein was the only employee who was not retained or fired based on her SAR score. Because her husband was killed in a motorcycle accident shortly before the RIF, Alverno granted her a special exemption. Had Stablein been evaluated solely on her SAR score, she would have been included in the RIF, but Adams still would not have been retained because another employee who lost her job had a better SAR score. That employee, a Caucasian woman under the age of 40, would have taken the position. Although Adams did not make the cut, she was placed at the top of a list of employees to be offered re-employment when possible; on "one or more occasions" within just one month of the RIF, Alverno offered to rehire Adams in another position for the same pay, without requiring her to forfeit her severance benefits. Adams refused this offer since the position Alverno offered to her would have required her to have close contact with patients, which she feared would put her in danger of spreading an infection to her terminally ill husband. Adams received a notice of right to sue from the E.E.O.C. and filed suit against Alverno in Indiana state court. Alverno's motion to remove the case to federal district court was granted; it then moved for and received summary judgment.

Adams initially contends that, relying on the direct method of proving discrimination, *see Cerutti v. BASF Corp.,* 349 F.3d 1055, 1061 (7th Cir.2003), she presented sufficient direct evidence of age discrimination to escape summary judgment.

Adams had no direct evidence, e.g., an admission from an Alverno manager that she was fired because of her age or race, so she had to rely on circumstantial evidence to satisfy the direct method of proof. *See Venturelli v. ARC Cmty. Serv., Inc.,* 350 F.3d 592, 601 (7th Cir.2003) (discussing three means of using circumstantial evidence to satisfy the direct method). Adams contends that the circumstantial evidence she presented demonstrated, among other things, that Alverno treated similarly situated workers better than it treated her and that Alverno's stated rationale for retaining Stablein was merely a pretext for its actual discriminatory intent. Her arguments under this standard fit more properly under the indirect method analysis, as the district court characterized her claims. We agree and accept this characterization.

The district court held, and Alverno does not dispute, that Adams successfully made her prima facie case on both the Title VII and ADEA claims under the indirect method by establishing that she belonged to a protected class, that her performance met Alverno's expectations, that she was fired, and that she was treated less favorably than similarly situated employees. Under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), this in turn shifted the burden to Alverno to show that it had a legitimate, nondiscriminatory reason for terminating Adams. Alverno clearly articulated its allegedly nondiscriminatory rationale: it implemented a RIF in order to meet the next year's budgetary targets and dismissed Adams as part of that RIF. Adams, therefore, had to show that the RIF was merely a pretext for discrimination in order to survive summary judgment. *Butts v. Aurora Health Care, Inc.,* 387 F.3d 921, 924 (7th Cir.2004).

Adams failed to establish a triable issue concerning whether the RIF itself or the retention of Stablein was pretextual. Adams' own statement of material facts shows that two employees had better SAR scores than both her and Stablein, but were still subjected to the RIF. One of these employees had a disciplinary infraction on her record, and thus would probably not have qualified for retention under the RIF guidelines, but the other clearly would have been retained if Stablein had been terminated. This employee is identified as a white female under the age of 30. Had Stablein not been retained, then, this employee would have taken her place, and Adams still would have been subjected to the RIF. Adams' own evidence clearly establishes that exempting Stablein from the RIF did not adversely affect her or any other employee belonging to a protected class. Alverno's decision to grant Stablein an exemption does not raise any triable issue of fact, and Alverno was properly granted summary judgment.

AFFIRMED.